1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| STEPHANIE SEAGRAVES, et al., | Case No. 3:24-cv-05081-TMC |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |
| v. | |
| DEPARTMENT OF CHILDREN YOUTH AND FAMILIES; ROSS HUNTER, MARCOS RODRIGUEZ; VICKIE YBARRA | |
| Defendant. | |

## I.     INTRODUCTION

This case arises out of Plaintiffs' requests for accommodations for their religious objections to Defendant Washington Department of Children, Youth, and Families' ("DCYF") COVID-19 vaccine mandate. Before the Court is Defendants DCYF, Ross Hunter, Marcos Rodriguez, and Vickie Ybarra's motion to dismiss (Dkt. 40). Plaintiffs responded (Dkt. 41) and Defendants replied (Dkt. 45). Having considered the briefing, governing law, and the balance of the record, the Court GRANTS the motion to dismiss, DISMISSES Plaintiffs' federal claims

with prejudice, and DECLINES to exercise supplemental jurisdiction over the remaining state-law claims. The state-law claims are DISMISSED without prejudice.

## II.    BACKGROUND

### A.    Factual Background

Because the Court is considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the following facts are those alleged in the amended complaint, Dkt. 29, which must be taken as true and construed in the light most favorable to Plaintiffs. *See Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014).

In August 2021, Washington State Governor Jay Inslee issued Proclamation 21-14[1] (with amendments, "the Proclamation") requiring most Washington state employees to be fully vaccinated against COVID-19 by October 18, 2021. Dkt. 1-2; *See* Dkt. 29 ¶¶ 45, 111. The Proclamation allowed employees who objected to vaccination based on a sincerely held religious belief under applicable law to seek exemption from the mandate and accommodation but noted that "State Agencies are not required to provide such accommodations if they would cause undue hardship." *Id.* at 5–6.

Plaintiffs are seventeen former DCYF employees who sought religious exemptions from Washington's COVID-19 vaccine mandate. Dkt. 29 ¶¶ 14–31. Plaintiffs claim DCYF wrongfully denied them accommodations and terminated their employment for failure to comply with the Proclamation. *Id.*

---

[1] The Court can consider a document not physically attached to the complaint if the parties do not contest its authenticity and the plaintiff necessarily relies on it. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

Defendant Hunter was the Secretary of DCYF, Defendant Ybarra was the Assistant Secretary of DCYF's Partnership, Prevention, and Services, and Defendant Rodriguez was the Human Resources Director of DCYF at the time Plaintiffs were terminated. Dkt. 29 ¶¶ 11–13.

Plaintiffs allege Defendant Hunter "personally and integrally participated in concocting DCYF's exemption and accommodations policies that were intentionally designed to treat religiously exempt DCYF employees less favorably than their similarly situat[ed] secularly exempt counterparts." *Id.* ¶ 35. And "Defendants Rodriguez and Ybarra . . . acted as both DCYF employees, who created DCYF's accommodation decision that discriminated against religiously exempt DCYF employees, and [they] did so with religious animus, which departed from religious neutrality and was the antithesis of religious tolerance." *Id.* Specifically, Plaintiffs reference a text message Hunter sent to an individual and an email[2] Hunter sent to DCYF administrators, which included Ybarra and Rodriguez. *Id.* ¶¶ 35–44; *see* Dkt. 46 at 4–7.

The text message conversation involved an individual asking Hunter, "Ross, I believe you may be vacationing this week but can you share if your department is following any particular set of guidelines for dealing with any requests for religious exemption to the Covid vaccination mandate?" Dkt. 47 at 4. Hunter responded, "Not figured out yet. We will be as strict as we are allowed to be." *Id.*

Hunter's email, dated August 23, 2021, had the subject matter: "Communications about vaccination" and discussed different ways to encourage vaccination. *Id.* at 6. The email provided:

We have a multi-prong approach to vaccination

1. "Get vaccinated or lose your job." It is unsafe for our staff to serve clients, particularly children and at-risk adults who have not been vaccinated if they are vastly more likely to spread the disease.
2. Make it easy to get vaccinated. Clinics in JR institutions, free shots, time off for shots and recovery, etc.

---

[2] *See id.*

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 3

3. Communicated to unvaccinated people in ways that is helpful for them to hear.

Our overall goal is to convince as many people as possible to get vaccinated rather than terminated. I am not an expert on communication, but from what I hear there are a number of approaches that are effective. These resolve around a couple of points:

- Safety. Is it safe to get vaccinated? There are several particularly pernicious myths: . . .
- Convenience—can we make is easy and convenient for them?
- Religious objections, real or imagined.
- Political tribalism

A number of resources came up in the cabinet meeting this morning.

- A 5-minute video from one of the MRNA vaccine developers about the extensive development and testing cycle.
- A North Dakota video from religious authorities (pope, etc.)
- A video from a variety of docs that people relate to.

We can, and should pull as many resources as this together as possible. I will send links when I get them from other cabinet people. Here's a cool one from MIT's Technology Review that I read today. Vickie and I may be the only people who relate to it, but it's interesting. We should provide lots of stuff like this.

I think it would be good to have a coordinated effort to communicate about the risk to the kids and families we serve to underpin the reasons we require[e] staff to meet this requirement. Once we get a strong message out about the inability to hide behind the exemption strategy we will want to start helping people over their other concerns.

*Id.*

Plaintiffs assert that (1) describing a communication strategy of "[g]et vaccinated or lose your job"; (2) referring to "religious objections, real or imagined"; (3) identifying "pope, etc." as a resource to encourage vaccination; and (4) stating "hide behind the exemption strategy" show that "Defendant Hunter's email targeted Christians, in particular Catholics, because he suggested to DCYF's Communications Director and others on the communications team about resources to use in the multiprong approach." Dkt. 29 ¶ 40.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 4

Plaintiffs further allege that "Defendant Hunter's August 23, 2021, email was in stark contrast to" an October 14, 2021 email that Hunter sent asking, "some employees will be unable (medically) to take it. How will we approve this?" *Id.* ¶ 44. Plaintiffs assert that "[w]hen making the individualized accommodation decisions . . . based on Defendant Hunter's emails and text messages, [Hunter] made it as strict as he could for religiously exempt employees but did not do the same for secularly exempt employees." *Id.* ¶ 57.

On January 30, 2024, Plaintiffs filed suit against DYCF and Ross Hunter, asserting sixteen causes of action under the U.S. Constitution, federal law, the Washington Constitution, and Washington law. Dkt. 1 ¶¶ 401–630. Defendants moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. 12. The Court granted Defendants' motion, concluding that Plaintiffs' claims seeking damages against DYCF and Hunter in his official capacity were barred by the Eleventh Amendment; Plaintiffs failed to adequately identify how Hunter personally participated in the alleged violations; and Plaintiffs abandoned their investigational drug use claims and takings claims. *See generally* Dkt. 27. Since Plaintiffs failed to state any federal claims, the Court declined to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c)(3). *Id.* at 8. Still, the Court found that leave to amend was proper since Plaintiffs had not yet amended their complaint and the deficiencies in their federal claims could be curable if Plaintiffs plead facts explaining Hunter's personal involvement in the alleged constitutional violations. *Id.* at 8–9.

Plaintiffs filed an amended complaint on October 14, 2024. *See* Dkt. 29. In the amended complaint, Plaintiffs added two individual defendants—Vickie Ybarra and Marcos Rodriguez. *See id.* Plaintiffs also included new factual allegations about a text message and email Hunter sent to DCYF administrators, which included Ybarra and Rodriguez. *Id.* ¶¶ 35–44; *see* Dkt. 46 at

4–7. They seek monetary damages, attorney's fees, and "[e]ach plaintiff seeks reinstatement to their former position[.]" Dkt. 29 ¶¶ 3, 4, 8, 9.

### III.    DISCUSSION

#### A.    Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Complaints may be dismissed under Rule 12(b)(6) for either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation omitted).

To survive a Rule 12(b)(6) motion, the complaint "does not need detailed factual allegations," *Twombly*, 550 U.S. at 555, but "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations omitted).

The Court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Tr.*, 768 F.3d at 945. But the Court is "not bound to accept as true a legal conclusion couched as a factual allegation."

*Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

**B.    The Court dismisses all federal claims.**

To state a claim for relief under Section 1983, a plaintiff must show: (1) that he or she suffered a violation of rights protected by the Constitution or created by federal statute, and (2) that the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To satisfy the causation requirement of Section 1983, a plaintiff must demonstrate that a defendant caused the alleged deprivation by doing an affirmative act, participating in another's affirmative act, or failing to perform an act which he or she was legally required to do. *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981) (citation omitted).

A Section 1983 "inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (citations omitted). Vicarious liability may not be imposed on a supervisory employee for the acts of their subordinates in an action brought under Section 1983. *Lemire v. California Dep't of Corrs. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013) (citation omitted). A supervisor may, however, be held liable under Section 1983 "if he or she was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation." *Jackson v. City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001).

>   *1.*    *The Court dismisses all claims against Hunter, Rodriguez, and Ybarra in their personal capacity.*
>
>      a)    *Free Exercise Claim*

To plead a free exercise claim, "a plaintiff must show that a government entity has burdened [his] sincere religious practice pursuant to a policy that is not neutral or generally applicable." *Waln v. Dysart Sch. Dist.*, 54 F.4th 1152, 1159 (9th Cir. 2022) (cleaned up). A law is not generally applicable if, even "in pursuit of legitimate interests," it "in a selective manner impose[s] burdens only on conduct motivated by religious belief." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah.*, 508 U.S. 520, 543 (1993). A law is not neutral "if the object of [the] law is to infringe upon or restrict practices because of their religious motivation." *Id.* at 533. If the law is not neutral or generally applicable, "it is invalid unless it is justified by a compelling interest and is narrowly tailored to advance that interest." *Id.* (citing *Employment Div., Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872, 878–79 (1990)). In contrast, "a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Id.* at 531 (citing *Smith*, 494 U.S. at 878–79).

To start, Plaintiffs fail to adequately identify how individual Defendants Hunter, Rodriguez, and Ybarra personally participated in violating Plaintiffs' free exercise rights. Plaintiffs argue that "[t]he FAC alleges sufficient facts to plausibly state a claim that Individual Defendants unconstitutionally infringed on Plaintiffs' free exercise rights by acting in a non-neutral manner with a religiously discriminatory purpose." Dkt. 41 at 5. But nearly all Plaintiffs' allegations are conclusory; their only concrete factual allegations are based on Hunter's text and email communications.

First, Plaintiffs point to a text message that Hunter sent to an individual stating that DYCF would be "as strict as we are allowed to be." *Id.* at 6; Dkt. 46 at 4. Plaintiffs next cite to different sections of Hunter's email that discussed ways to encourage vaccination among employees. Dkt. 41 at 6–7; *see* Dkt. 46 at 6. Specifically, Plaintiffs reference the first prong of

the multiprong communications approach: "'[g]et vaccinated or lose your job.' It is unsafe for our staff to serve clients, particularly children and at-risk adults who have not been vaccinated if they are vastly more likely to spread the disease." Dkt. 41 at 6; Dkt. 46 at 6. Plaintiffs next cite to Hunter's discussion of challenges to vaccination, which included "[r]eligious objections, real or imagined." Dkt. 41 at 6; Dkt. 46 at 6. Finally, Plaintiffs point to Hunter's instruction to Rodriguez and Ybarra to send a "strong message . . . about the inability to hide behind the exemption strategy . . . to start helping people overcome their other concerns." Dkt. 41 at 6; Dkt. 46 at 6. Based on these facts, Plaintiffs conclude that the "FAC alleges Individual Defendants' communications, their multi-prong approach, and their actions evince hostility towards religious beliefs or practices that created a conflict with becoming fully vaccinated." Dkt. 41 at 7.

Defendants contend, "Plaintiffs vaguely allege that each Individual Defendant 'personally participated in concocting and directing DCYF's exemption policies' and that they 'were primarily motivated by religious animus' in doing so." Dkt. 40 at 13–14 (citing Dkt. 29 ¶¶ 6, 11–13). Defendants argue, however, that "[v]ague and conclusory allegations of official participation in a civil rights violation are not sufficient to withstand a motion to dismiss" and Plaintiffs continue "to fall back on the same theories of vicarious liability that this Court rejected" in its previous order. *Id.* (citing *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F. 2d 266, 268 (9th Cir. 1982)). To the extent that Plaintiffs have alleged specific acts, Defendants maintain that Plaintiffs fail to affirmatively link those actions with their purported injuries. *Id.*

The Court agrees. Most of Plaintiffs' factual allegations are directed at Hunter, but even then, Plaintiffs fail to allege that he personally participated in substantially burdening their practice of religion. *See Leer*, 844 F.2d at 633 (personal participation requires that a person "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he

is legally required to do that *causes* the deprivation[.]"); *see also Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015) ("A substantial burden . . . place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs.") (cleaned up).

For example, Hunter's text message stating that that DCYF would be "strict as we are allowed to be" is merely a restatement of the Proclamation's requirement that all state employees be vaccinated unless they are entitled to an exemption under existing law. *See* Dkt. 1-2 at 5; Dkt. 46 at 4. The only reasonable inference from Hunter's statement is that he intended for DCYF to *follow* its statutory obligations on religious accommodations—not design a policy that substantially burdened religious belief. Additionally, Plaintiffs fail to show how discussing different strategies to encourage voluntary compliance with the Proclamation "evince[s] hostility towards religious beliefs or practices." *See* Dkt. 41 at 7; *Iqbal*, 556 U.S. at 676 ("Where the claim is invidious discrimination in contravention of the First . . .  Amendment[], our decisions make clear that the plaintiff must plead and prove that the defendant acted with discriminatory purpose.").

Similarly, Hunter's email—which describes a messaging strategy of "[g]et vaccinated or lose your job,"; discusses how to encourage vaccination for employees who have "religious objections, real or imagined,"; and encourages sending a "strong message about the inability to hide behind the exemption strategy"—merely reiterates the State's goal of persuading employees to be vaccinated, and that the Proclamation (and relevant state and federal law) limits religious exemptions to those with sincerely held religious beliefs. Dkt. 46 at 6; *see* Dkt. 1-2 at 5; *see also Rolovich v. Washington State Univ.*, No. 2:22-CV-0319-TOR, 2023 WL 3733894, at *6 (E.D. Wash. May 30, 2023) ("[Defendant's] repeated statements to Plaintiff that his employment

would be terminated with just cause for failing to comply with the vaccination requirements were in accord with the Proclamation" and not unconstitutionally coercive). Lastly, Hunter's reference to using statements from religious authorities such as "the pope, etc." as persuasive resources for voluntary vaccination does not plausibly allege any intent to selectively burden the religious beliefs of Christians or Catholics. Dkt. 46 at 6; *Iqbal*, 556 U.S. at 690 (concluding that the plaintiff's "complaint has not nudged his claims of invidious discrimination across the line from conceivable to plausible") (cleaned up).

None of these allegations show that Hunter's actions substantially burdened Plaintiffs' religious exercise. *See Jones*, 791 F.3d at 1031. Furthermore, Plaintiffs "must establish proximate or legal causation," but they do not allege how Hunter's discussion of persuasive messaging is linked to the termination of any Plaintiff from DYCF. *Arnold*, 637 F.2d at 1355*; see Rizzo v. Goode*, 423 U.S. 362, 370–71 (1976) (liability for damages under Section 1983 is imposed "only for conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws."). As Defendants point out, Hunter's email discusses DCYF's internal communications strategy, not the accommodation policy, and thus has no bearing on any of the accommodation decisions Plaintiffs challenge. *See* Dkt. 45 at 10. Absent a causal connection between Hunter's conduct and the alleged constitutional deprivation, Plaintiffs fail to state a claim against Hunter under Section 1983.

Plaintiffs' claims against Rodriguez and Ybarra are even thinner. The only factual allegation against Rodriguez and Ybarra is that they received the August 23, 2021 email from Hunter. *See* Dkt. 29 ¶¶ 38–39; Dkt. 46 at 6. All other allegations that Rodriguez and Ybarra "personally and integrally participated in violating Plaintiff[s'] fundamental constitutional rights contained in the Free Exercise Clause" are speculative and conclusory. *Id.* ¶¶ 79–80; *see Taylor v. Washington State Dep't of Corr.*, No. C23-6186-MLP, 2024 WL 4529236, at *3 (W.D. Wash.

Oct. 18, 2024) (finding that the plaintiff failed to state a Section 1983 claim for supervisory liability because they did not "allege any actions or omissions by either Individual Defendant with regard to any specific decision or policy"). Accordingly, since Plaintiffs do not adequately plead personal participation of any individual Defendant, Plaintiffs' free exercise claim fails as a matter of law.

Even if the Court found that Plaintiffs had adequately alleged personal participation, the free exercise claim fails on the merits. To begin, Plaintiffs have not plausibly alleged that the vaccination mandate was not neutral and generally applicable. *See Lukumi*, 508 U.S. at 533. Plaintiffs argue that individual Defendants acted "in a non-neutral manner with a religiously discriminatory purpose" based on Hunter's text message and email, which they claim serve as "direct evidence of hostility towards religious beliefs and practices." Dkt. 41 at 5, 7. Plaintiffs attempt to analogize the statements made in Hunter's email to the Colorado Commissioner's public statements in *Masterpiece Cakeshop v. Colorado C.R. Comm'n*, 584 U.S. 617, 635 (2018). *Id.* at 7–8 ("both the Commissioner's statements and the statements here similarly demean religious beliefs and practices"). There, the Commissioner stated:

> Freedom of religion and religion has been used to justify all kinds of discrimination throughout history, whether it be slavery, whether it be the holocaust, whether it be—I mean, we—we can list hundreds of situations where freedom of religion has been used to justify discrimination. And to me it is one of the most despicable pieces of rhetoric that people can use to—to use their religion to hurt others.

*Masterpiece Cakeshop*, 584 U.S. at 635. The Supreme Court found that the Commissioner's comments reflected hostility towards a religion by "by describing it as despicable, and also by characterizing it as merely rhetorical—something insubstantial and even insincere." *Id.*

Here, there is no such comparable language. As explained above, the statements made in Hunter's text message and email, *see* Dkt. 46 at 4, 6, simply restate the Proclamation's requirements and discuss ways that DCYF could encourage its employees to choose vaccination

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 12

and overcome hesitancy based on secular and religious concerns alike. Hunter does not "disparage" religion by comparing it to "defenses of slavery and the Holocaust." *See Masterpiece Cakeshop*, 584 U.S. at 635. Rather, the focus of the email is on developing strategies to encourage "as many people to get vaccinated." Dkt. 46 at 6. Thus, Plaintiffs do not plausibly allege that DCYF's vaccination mandate was implemented in a non-neutral manner.

Plaintiff's argument that the accommodation policy was not generally applicable because the "Individual Defendants . . . gave themselves (and their subordinates) standardless discretion to decide which unvaccinated DCYF employee they would accommodate" also fails. *See* Dkt. 41 at 9. As support, Plaintiffs cite to *Fellowship of Christian Athletes v. San Jose Unified School District Board of Education*, where the Ninth Circuit found that the school district's anti-discrimination policy was not generally applicable. 82 F.4th 664, 688 (9th Cir. 2023). There, the Ninth Circuit noted that the district did not "maintain any written list of such approved criteria" but instead provided exemptions "based on the District officials' use of 'common sense' on a case-by-case basis." *Id.* But here, the Proclamation itself lays out the applicable standard—"[a]s provided in the ADA, Title VII, and the WLAD, individuals or entities for which Health Care Providers work as employees, contractors, or volunteers and State Agencies are not required to provide such accommodations if they would cause undue hardship." Dkt. 1-2 at 5–6. Unlike the school district in *Fellowship of Christian Athletes*, individual Defendants did not exercise standardless discretion given that the accommodations decisions were based on existing federal and state law. *See Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1082 (9th Cir. 2015) ("The mere existence of an exemption that affords some minimal governmental discretion does not destroy a law's general applicability.").

Next, Plaintiffs contend that "DYCF's accommodation policy and decision are not generally applicable" because "Defendants purposefully created the accommodation policy to

make accommodating unvaccinated DCYF religious exempt employees as strict as they were allowed to be . . . and to find a way to accommodate an unvaccinated DCYF secular exempt employee who had a medical condition that conflicted with their ability to get a vaccine." Dkt. 41 at 11; *see* Dkt. 29 ¶¶ 44, 58.

The Supreme Court has held, "whether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue." *Tandon v. Newsom*, 593 U.S. 61, 62 (2021). "A law . . . lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Fulton v. City of Philadelphia, Pennsylvania*, 593 U.S. 522, 534 (2021). The Ninth Circuit further clarified that "medical exemption from healthcare worker COVID-19 vaccination mandate differed from religious exemption in that mandating the vaccination of people with medical contraindications or precautions 'would not effectively advance' the government's interest in 'protecting the health' of such individuals." *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1178 (9th Cir. 2021) (citing *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 285 (2d Cir. 2021)). In other words, a medical exemption "serves the primary interest for imposing the mandate—protecting [] 'health and safety'—and so does not undermine the [public employer's] interests as a religious exemption would." *Id.* (citing *Fulton*, 593 U.S. at 534).

Like the school district in *Doe*, DCYF's interest is to "protect the health and safety of employees by establishing and maintaining a healthy and safe work environment[.]" Dkt. 1-2 at 4. Therefore, granting medical exemptions, even at a higher rate than religious exemptions as Plaintiffs allege, *see* Dkt. 29 ¶ 58, does not undermine DCYF's interests, nor does it raise "a serious question as to whether the mandate is generally applicable." *Doe*, 19 F.4th at 1177.

Plaintiffs again claim that there is hostility towards religious objectors by arguing that individual Defendants more easily accommodated individuals with medical exemptions. Dkt. 41 at 8. To this end, Plaintiffs highlight Hunter's October 14, 2021 email where he asked, "some employees will be unable (medically) to take it. How will we approve this?" *Id.*; *see* Dkt. 29 ¶ 44. Construing this allegation in the light most favorable to Plaintiffs, the Court is unable to infer that facilitating the accommodation process for medically exempt individuals reflects any animosity towards religious objectors. In both instances, the Proclamation instructed state agencies to apply existing legal requirements: the ADA for medical exemptions, and Title VII and the WLAD for religious exemptions. Hunter's emails do nothing more than reflect the unremarkable reality that some employees would meet the requirements for medical or religious accommodation, and some would not. Without any other facts, Plaintiffs fail to adequately plead that DCYF's implementation of the vaccination mandate was neither neutral nor generally applicable. *See Lukumi*, 508 U.S. at 533. And Plaintiffs "do not argue that they are likely to succeed on the merits of their free exercise claim if rational basis review applies." *Doe*, 19 F.4th at 1180 (citing *Parents for Priv. v. Barr*, 949 F.3d 1210, 1238 (9th Cir. 2020) ("[T]he Plan must be upheld if it is rationally related to a legitimate governmental purpose.").

Since Plaintiffs fail to allege a plausible violation of their free exercise rights, this claim is DIMISSED with prejudice.

### b) Equal Protection Claim

To plead an equal protection claim, a plaintiff must show that a law treats people differently based on a protected characteristic. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). "A statute is subject to the heightened scrutiny of equal protection analysis when it prohibits activities that are protected legally and involves a legally

cognizable suspect class." *United States v. Pitts*, 908 F.2d 458, 459 (9th Cir. 1990) (citation omitted).

Plaintiffs reassert the same argument that individual Defendants treated religious objectors worse than medically exempt individuals as the basis for their equal protection claim. Dkt. 41 at 18. The equal protection challenge is thus "subsumed by, and co-extensive with, [their] First Amendment claim." *Orin v. Barclay*, 272 F.3d 1207, 1213 n.3 (9th Cir. 2001). Therefore, for the same reasons that Plaintiffs' free exercise claim fails, *see supra* Sec. II.B.1.a, Plaintiffs' equal protection claim also lacks merit and is DISMISSED with prejudice.

### c)    *Procedural Due Process Claim*

Plaintiffs argue that "not providing Plaintiffs a pre-termination hearing is unconstitutional" under *Loudermill*. Dkt. 41 at 14; *see Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). They contend that a "pre-termination hearing must, at minimum, permit public employees, like Plaintiffs, an opportunity to tell their side of the story and provide rebuttal declarations." Dkt. 41 at 14 (citing *Pilz v. Inslee*, No. 3:21-CV-05735-BJR, 2022 WL 1719172, at *7 (W.D. Wash. May 27, 2022), *aff'd*, No. 22-35508, 2023 WL 8866565 (9th Cir. Dec. 22, 2023)).

Defendants respond that "Plaintiffs fail to allege that the Individual Defendants were involved in any Plaintiff's accommodation decision" and "Plaintiffs' vague and conclusory allegation that 'Defendants personally participated in creating DCYF's accommodation decision making process that did not provide Plaintiffs with a meaningful opportunity to be heard' is insufficient." Dkt. 45 at 13 (quoting Dkt. 29 ¶ 136).

The Court agrees. Plaintiffs have not presented any facts to suggest that Hunter, Rodriguez, or Ybarra participated in even one of the seventeen Plaintiffs' accommodation decisions, or that they were responsible for a specific decision not to allow pre-termination

hearings. *See generally* Dkt. 29; *see also Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, the plaintiff . . . must plead that each Government-official defendant, through his own individual actions, has violated the Constitution.") (internal citation omitted); *id.* at 678 ("mere conclusory statements[] do not suffice"). Without factual allegations demonstrating that the individual Defendants were responsible for the alleged failure to provide each Plaintiff a meaningful opportunity to be heard, the procedural due process claim fails as a matter of law.

Plaintiffs' procedural due process claim also fails on its merits, even assuming personal participation by the named defendants. "District courts around the country [] have rejected procedural due process challenges to employer-issued vaccine mandates during the COVID-19 pandemic, finding employees are not entitled to greater service than what is provided by enactment of the mandates themselves." *Pilz*, 2022 WL 1719172, at *7 (cleaned up) (citing cases). As Defendants point out, the district court in *Pilz* noted that "*Loudermill* held that the essential requirements of due process are notice and an opportunity to respond." *Id.* (cleaned up); *see* Dkt. 45 at 14. "Plaintiffs cannot seriously maintain that they did not have written notice of the vaccine requirement" and the "Proclamation created a process by which the employees could apply for exemptions and accommodations, and essentially 'present [their] side of the story' to avoid termination." *Pilz*, 2022 WL 1719172, at *7.

Plaintiffs' amended complaint asserts that they received notice of the vaccination mandate and applied for a religious exemption. *See* Dkt. 29 ¶¶ 14(b), 15(b), 16(b), 17(b), 18(b), 19(b), 20(b), 21(b), 22(b), 23(b), 24(b), 25(b), 26(b), 27(b), 28(b), 29(b), 30(b). The "opportunity to be heard and present rebuttal affidavits is all that *Loudermill* requires" and the "fact that Plaintiffs' accommodation requests were unsuccessful, however, does not belie the fact that Plaintiffs were given the *opportunity* to be heard." *Pilz*, 2022 WL 1719172, at *7 (emphasis in

original); *see also Gray v. Washington Dep't of Transportation*, No. 23-3278, 2024 WL 5001484, at *1 (9th Cir. Dec. 6, 2024) (concluding that "[e]mployees received as much notice and process as the law required" given that they "received notice of the vaccination policy, the exemption and accommodation decision, and the potential for termination, and [were] offered . . . 'pretermination opportunit[ies] to respond' via written submissions and meetings.") (citing *Loudermill*, 470 U.S. at 542). Accordingly, Plaintiffs' procedural due process claim is DISMISSED with prejudice.

    d)  *Substantive Due Process Claim*

  As a threshold matter, Plaintiffs raise a substantive due process claim based on the right to bodily autonomy for the first time in their opposition brief. *See* Dkt. 41 at 15–16. Rule 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). The statement of the claim need only give the defendant "fair notice of what the . . . [plaintiff's] claim is and the grounds upon which it rests[.]" *Twombly*, 550 U.S. at 555 (cleaned up). Relatedly, incorrect labeling of a claim or failure to specify its correct legal basis is not grounds for dismissal under Rule 8, and courts determine whether there is fair notice by looking to the substance of the claims. *See Sessions v. Chrysler Corp.*, 517 F.2d 759, 760–61 (9th Cir. 1975) (explaining that mislabeling a cause of action in the complaint "is irrelevant" so long as the plaintiff is "entitled to relief against [the defendants] on any theory").

  The above rules establish that "fair notice" does not require the complaint to identify with precision or correctly label the cause of action or legal theory relevant to a particular claim. However, the substance of the complaint must be sufficient to give the defendant some notice of the theory asserted. Here, Plaintiffs' amended complaint did not provide Defendants with "fair notice" as it contains only fleeting references to their substantive due process claim. *See* Dkt 29

¶¶ 2, 3, 208. Nowhere in the amended complaint do Plaintiffs allege facts that support their legal theory that the vaccine mandate violated their bodily autonomy. *See generally* Dkt. 29.

Instead, in their opposition brief, Plaintiffs cite to the concurring opinion in *Health Freedom Defense Fund v. Carvalho*, for the proposition that the COVID-19 vaccine mandate "implicates the fundamental right to refuse medical treatment" and does not justify the application of rational basis scrutiny. 104 F.4th 715, 728 (9th Cir. 2024), *reh'g en banc granted, opinion vacated*, 127 F.4th 750 (9th Cir. 2025). To be clear, "concurring opinions have no binding precedential value" and the cited opinion has been vacated until the case is reheard en banc under Federal Rule of Civil Procedure 40(c). *Duarte v. City of Stockton*, 60 F.4th 566, 574 (9th Cir.), *cert. denied*, 143 S. Ct. 2665 (2023) (citations omitted). Plaintiffs otherwise do not provide any authority that establishes a fundamental right to refuse vaccination requirements such that strict scrutiny would apply.

Instead, the Supreme Court has held that the right to refuse vaccines is not a fundamental right, and federal courts have affirmed this holding in the context of COVID-19 vaccine mandates. *See Jacobson v. Massachusetts*, 197 U.S. 11, 12–13 (1905) (upholding Massachusetts's vaccine mandate that applied to all adults and imposed penalties and criminal charges for non-compliance); *Children's Health Def., Inc. v. Rutgers, the State Univ. of New Jersey*, 93 F.4th 66, 78 (3d Cir. 2024), *cert. denied sub nom. Children's Health Def. v. Rutgers, the State Univ. of New Jersey*, 144 S. Ct. 2688 (2024) ("As federal courts have uniformly held, there is no fundamental right to refuse vaccination.") (citing cases); *Kheriaty v. Regents of the Univ. of California*, No. 22-55001, 2022 WL 17175070, at *1 (9th Cir. Nov. 23, 2022) ("Kheriaty fails to offer any appropriate historical example to establish a 'fundamental right' to be free from a vaccine mandate at a workplace.").

Again, Plaintiffs do not argue that the DCYF's vaccine mandate does not pass the rational basis test. *See generally* Dkt. 41. Plaintiffs also failed to adequately plead their substantive due process claim, and since the claim otherwise fails on its merits, it is DISMISSED with prejudice.

e)     *Contracts Clause Claim*

Finally, Defendants argue that Plaintiffs did not properly plead an impairment of their contractual rights and raise a defense of qualified immunity. Dkt. 40 at 23–24. Plaintiffs do not dispute or otherwise make a Contracts Clause argument in their opposition brief, and the Court considers the lack of response as abandoning the claim. *See* Dkt. 41; *Gray v. Washington State Dep't of Transportation*, No. 3:23-CV-05418-DGE, 2023 WL 6622232, at *6 (W.D. Wash. Oct. 11, 2023), *aff'd sub nom. Gray v. Washington Dep't of Transportation*, No. 23-3278, 2024 WL 5001484 (9th Cir. Dec. 6, 2024) (finding the Plaintiffs' failure to address their takings claim "to be a concession of merit").

Plaintiffs' Contracts Clause claim fails on other grounds. The Contracts Clause limits states' abilities to disrupt contractual agreements. U.S. Const., Art. I, § 10, cl. 1; *see Ashley Sveen v. Kaye Melin*, 584 U.S. 811, 819 (2018). To determine whether a plaintiff has successfully stated a claim under the Contracts Clause, the Court applies a two-step test. *See Sveen*, 584 U.S. at 819. To begin, the "threshold issue is whether the state law has operated as a substantial impairment of a contractual relationship." *Id.* (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978) (internal quotations omitted)). If the first prong is satisfied, the Court considers whether the "state law is drawn in an appropriate and reasonable way to advance a significant and legitimate public purpose." *Id.* (quoting *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411–412 (1983)) (internal quotations omitted).

Here, Plaintiffs have not plead the first step of the Contracts Clause test. Plaintiffs allege that Defendants violated the Contracts Clause by interfering with their right to continued employment. Dkt. 29 ¶ 230. But substantial impairment exists to "the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights." *Sveen*, 584 U.S. at 819 (citations omitted). Plaintiffs have not addressed any of these elements and therefore fail to plausibly state a claim under the Contracts Clause. Plaintiffs' Contracts Clause claim is thus DISMISSED with prejudice.

**2.**  *The Court does not reach the qualified immunity defense.*

The Court does not reach the question of qualified immunity because it has dismissed the federal claims against Hunter, Rodriguez, and Ybarra in their personal capacity for lack of an underlying constitutional violation.

**3.**  *The Court dismisses all claims against Hunter, Rodriguez, and Ybarra in their official capacity.*

"[S]tate officials are 'persons' under § 1983 when sued for prospective injunctive relief." *Cornel v. Hawaii*, 37 F.4th 527, 531 (9th Cir. 2022) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989)). "This exception for prospective injunctive relief, called the *Ex parte Young* doctrine, applies where a plaintiff 'alleges an ongoing violation of federal law, and where the relief sought is prospective rather than retrospective.'" *Id.* (cleaned up). The Ninth Circuit has held that under Section 1983, "reinstatement is a legitimate request for prospective injunctive relief." *Doe v. Lawrence Livermore Nat. Lab'y*, 131 F.3d 836, 841–42 (9th Cir. 1997) ("Indeed other circuits have held overwhelmingly that job reinstatement constitutes prospective injunctive relief.") (citing cases). But even if the plaintiff seeks a proper remedy, the plaintiff

must also allege an "ongoing violation of the plaintiff's federal constitutional or statutory rights." *Cent. Rsrv. Life of N. Am. Ins. Co. v. Struve*, 852 F.2d 1158, 1161 (9th Cir. 1988) (cleaned up).

Plaintiffs argues that since they are seeking reinstatement, they may assert an *Ex parte Young* claim. Dkt. 41 at 17. The Court agrees that reinstatement is prospective relief. *See Lawrence Livermore*, 131 F.3d at 842. Nevertheless, the *Ex parte Young* exception does not apply here because the claim for reinstatement does not remedy any ongoing violation of Plaintiffs' constitutional rights. First, Plaintiffs have not plead any plausible constitutional violation. *See supra* Sec. III.B.1.a–e. Second, Plaintiffs do not address how their alleged constitutional violations are ongoing. *See id.* at 531; Dkt. 41 at 17–18; *Cornel*, 37 F.4th at 531–32 ("[Plaintiff] identifies no ongoing violation of federal law to enjoin. Her § 1983 claim is therefore limited to damages against [Defendant] in his personal capacity."). There is no dispute that "the Proclamation has been rescinded and any [DCYF] policy dependent on it is thus no longer in effect" and Plaintiffs "make no factual allegations of ongoing violations." *Taylor*, 2024 WL 2209684, at *4. And unlike the plaintiff in *Lawrence Livermore*, Plaintiffs here have not "alleged an ongoing policy and threat of future enforcement" which would warrant injunctive relief. 131 F.3d at 841; *see Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007) (noting that injunctive relief in *Ex parte Young* suits "serve the purpose of preventing present and future harm" to the plaintiff).

Accordingly, the Court DISMISSES with prejudice all federal claims against individual Defendants in their official capacity.

**C.    The Court declines to exercise supplemental jurisdiction over state law claims.**

Plaintiffs have failed to state any federal claims. Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over the state law claims and dismisses them without prejudice.

**D.      Leave to amend is futile.**

The Court declines to grant Plaintiffs additional leave to amend their dismissed claims. When assessing the propriety of leave to amend, courts consider five factors: bad faith, undue delay, prejudice to the opposing party, futility, and prior amendment. *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011). Here, Plaintiffs already amended their pleading in response to an earlier motion to dismiss. *See* Dkt. 29. In doing so, they had an opportunity to cure the alleged defects. Moreover, amendment would be futile because the "underlying facts" do not "provide proper grounds for relief," and the Court cannot "conceive of facts that would render" Plaintiffs' dismissed claims "viable." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988) (cleaned up); *see also Corinthian Colls.*, 655 F.3d at 995 ("[D]ismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment.") (cleaned up). Accordingly, the Court will not grant Plaintiffs leave to amend.

## IV.      CONCLUSION

For the reasons explained above, it is hereby ORDERED that:

- Defendants' motion to dismiss (Dkt. 40) is GRANTED as to Plaintiffs' claims under the U.S. Constitution. The Court DISMISSES with prejudice all federal claims against DCYF and damages claims against Hunter, Rodriguez, and Ybarra in their personal capacity. The Court DISMISSES with prejudice all claims for injunctive relief against Hunter, Rodriguez, and Ybarra in their official capacity. The Court DISMISSES without prejudice all state claims.

- The Court DENIES Plaintiffs leave to amend their complaint.

Dated this 7th day of April, 2025.

Tiffany M. Cartwright
United States District Judge